**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MIRA TZUR,<br><br>             Plaintiff,<br><br>vs.<br><br>HENKEL OF AMERICA, INC., HENKEL CORPORATION, HENKEL CONSUMER GOODS, INC., and WENDY GUTKIN, individually and in her official capacity,<br><br>             Defendants. | Case No. 1:23-cv-2923 (JLR) (JW) |

## DEFENDANT WENDY GUTKIN'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT

125946762.1

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................2

LEGAL STANDARD..........................................................................................................5

     A.     Federal Rule of Civil Procedure 12(b)(2) ..............................................5

     B.     Federal Rule of Civil Procedure 12(b)(6) ..............................................6

THE COURT LACKS PERSONAL JURISDICTION OVER GUTKIN .............................6

     A.     The Court Lacks General Jurisdiction Over Gutkin ................................6

     B.     The Court Lacks Specific Jurisdiction Over Gutkin................................7

     C.     The Exercise of Jurisdiction Over Gutkin Would Violate Due Process ...............10

THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST GUTKIN ...........12

     A.     Plaintiff Fails to State a Negligence Claim (First Cause of Action)....................12

     B.     Plaintiff Fails to State a Negligence or Strict Liability Claim (Second and Third Causes of Action)...........................................................13

     C.     The Economic Loss Doctrine Bars Plaintiff's Negligence, and Strict Liability Claims (First, Second, and Third Causes of Action) .............................16

     D.     Plaintiff Fails to State a Breach of Express Warranty or Breach of Implied Warranty Claim (Fourth and Fifth Causes of Action) .............................18

     E.     Plaintiff Fails to State a Fraudulent Misrepresentation or Fraudulent Concealment Claim (Sixth and Seventh Causes of Action) ..................................22

     F.     Negligent Hiring and Retention (Eighth Cause of Action)...................................25

CONCLUSION....................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aberbach v. Biomedical Tissue Servs., Ltd.*,
    48 A.D.3d 716 (App. Div. 2008) ....................................................................................14, 18

*Alwand Vahan Jewelry, Ltd. v. Lustour, Inc.*,
    No. 21-CV-01959, 2021 WL 3604517 (S.D.N.Y. Aug. 13, 2021)..........................................11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................................6

*Barnett v. City of Yonkers*,
    731 F. Supp. 594 (S.D.N.Y. 1990) ......................................................................................18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................................6

*Betro v. GAC Int'l, Inc.*,
    158 A.D.2d 498 (App. Div. 1990) ........................................................................................19

*Brown v. Showtime Networks, Inc.*,
    394 F. Supp. 3d 418 (S.D.N.Y. 2019)....................................................................................5

*Caulfield v. Imagine Advisors, Inc.*,
    No. 07-CV-01257, 2007 WL 4615504 (S.D.N.Y. Dec. 27, 2007) ...........................................9

*Cavanagh v. Ford Motor Co.*,
    No. 13-CV-04584, 2014 WL 2048571 (E.D.N.Y. May 19, 2014)..............................15, 16, 20

*Cedar & Washington Assocs., LLC v. Bovis Lend Lease LMB, Inc.*,
    95 A.D.3d 448 (App. Div. 2012) ..........................................................................................18

*Chenango Cnty. Indus. Dev. Agency v. Lockwood Greene Eng'rs, Inc.*,
    114 A.D.2d 728 (App. Div. 1985) ........................................................................................19

*Cohen v. Koenig*,
    25 F.3d 1168 (2d Cir. 1994).................................................................................................23

*DeVillegas v. Quality Roofing, Inc.*,
    No. CV-92-0294190-S, 1993 WL 515671 (Conn. Super. Ct. Nov. 30, 1993) ......................17

*E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*,
    133 F. Supp. 3d 430 (D. Conn. 2015)...................................................................................22

*Edwards v. Sequoia Fund, Inc.*,
  938 F.3d 8 (2d Cir. 2019)................................................................................................6

*Ehrens v. Lutheran Church*,
  385 F.3d 232 (2d Cir. 2004)..........................................................................................25

*Elsevier, Inc. v. Grossman*,
  77 F. Supp. 3d 331 (S.D.N.Y. 2015).............................................................................10

*Epstein v. Giannattasio*,
  25 Conn. Supp. 109 (1963)...........................................................................................19

*Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
  375 F.3d 168 (2d Cir. 2004)..........................................................................................22

*Faux v. Thomas Indus., Inc.*,
  No. CV-89-0233934-S, 1992 WL 293230 (Conn. Super. Ct. Oct. 8, 1992) ..............13

*Favale v. Roman Catholic Diocese of Bridgeport*,
  233 F.R.D. 243 (D. Conn. 2005)...................................................................................25

*Fetet v. Altice USA, Inc.*,
  No. 21-CV-01512, 2021 WL 2941917 (S.D.N.Y. July 12, 2021)................................23

*Flagg Energy Dev. Corp. v. Gen. Motors Corp.*,
  244 Conn. 126 (1998) ...................................................................................................17

*G&R Moojestic Treats Inc. v. MaggieMoo's Int'l, LLC*,
  2004 U.S. Dist. LEXIS 8806 (S.D.N.Y. May 19, 2004)...............................................12

*Gilbert v. Indeed, Inc.*,
  513 F. Supp. 3d 374 (S.D.N.Y. 2021).............................................................................8

*Goldstein v. Brogan Cadillac Oldsmobile Corp.*,
  90 A.D.2d 512 (App. Div. 1982) ..................................................................................14

*Hemming v. Certainteed Corp.*,
  97 A.D.2d 976 (App. Div. 1983) .............................................................................16, 17

*Hingos v. W.L. Gore & Assoc.*,
  No. 3:16-CV-00969, 2017 WL 3309095 (N.D.N.Y. Jan. 27, 2017).............................20

*Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*,
  505 F. Supp. 3d 137 (N.D.N.Y. 2020)..........................................................................20

*Kyszenia v. Ricoh USA, Inc.*,
  583 F. Supp. 3d 350 (E.D.N.Y. 2022) ...............................................................16, 21, 24

125946762.1

*La Barre v. Mitchell*,
    256 A.D.2d 850 (App. Div. 1998) ........................................................................16

*Lear v. Royal Caribbean Cruises Ltd.*,
    No. 1:20-CV-04660, 2021 WL 1299489 (S.D.N.Y. Apr. 7, 2021) ........................10

*Lebron v. Encarnacion*,
    253 F. Supp. 3d 513 (E.D.N.Y. 2017) ...................................................5, 6, 9, 10, 11

*Louis Hornick & Co., Inc. v. Darbyco, Inc.*,
    No. 12-CV-05892, 2013 WL 3819643 (S.D.N.Y. July 23, 2013) .........................23

*McConologue v. Smith & Nephew, Inc.*,
    8 F. Supp. 3d 93 (D. Conn. 2014) .......................................................................13

*McCullough v. World Wrestling Ent., Inc.*,
    172 F. Supp. 3d 528 (D. Conn. 2016) ..................................................................24

*Mountain W. Helicopter, LLC v. Kaman Aerospace*,
    310 F. Supp. 2d 459 (D. Conn. 2004) ..................................................................17

*O'Neil v. Argon Med. Devices, Inc.*,
    No. 3:17-CV-00640, 2020 WL 1149904 (N.D.N.Y. Feb. 13, 2020) ....................20

*Oden v. Bos. Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) ..........................13, 14, 15, 19, 20, 21, 22, 24

*Osborn v. Kelley*,
    61 A.D.2d 367 (App. Div. 1978) .........................................................................19

*Penguin Grp. (USA) Inc. v. Am. Buddha*,
    609 F.3d 30 (2d Cir. 2010).....................................................................................5

*Perlmutter v. Beth David Hosp.*,
    308 N.Y. 100 (1954) ...........................................................................................18

*Phila. Indem. Ins. Co. v. Lennox Indus., Inc.*,
    No. 3:18-CV-00217, 2020 WL 705263 (D. Conn. Feb. 12, 2020)
    .......................................................................................................12, 15, 19, 20

*Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*,
    991 F.2d 42 (2d Cir. 1993)...................................................................................24

*Queensbury Union Free Sch. Dist. v. Jim Walter Corp.*,
    91 Misc. 2d 804 (Sup. Ct. 1977).........................................................................14

*Reich v. Lopez*,
    38 F. Supp. 3d 436 (S.D.N.Y. 2014)................................................................6, 7, 8

*Royalty Network Inc. v. Dishant.com, LLC*,
    638 F. Supp. 2d 410 (S.D.N.Y. 2009) ........................................................................8

*Schulz v. Medtronic, Inc.*,
    No. 3:21-CV-00414, 2022 WL 503960 (D. Conn. Feb. 18, 2022) ....................................14, 15

*Stagl v. Delta Airlines, Inc.*,
    52 F.3d 463 (2d Cir. 1995) .........................................................................................12

*Stein v. Viscarello*,
    No. 11-CV-08304, 2012 WL 2866261 (S.D.N.Y. June 28, 2012) ................................5, 9, 10

*Stroud v. Tyson Foods, Inc.*,
    91 F. Supp. 3d 381 (E.D.N.Y. 2015) .........................................................................10

*Teixeria v. St. Jude Med. S.C., Inc.*,
    193 F. Supp. 3d 218 (W.D.N.Y. 2016) .......................................................................21

*Teodoro v. Dolan*,
    No. CV-90-0303297, 1991 WL 288837 (Conn. Super. Ct. Dec. 27, 1991) ..........................19

*In re Trace Int'l Holdings, Inc.*,
    289 B.R. 548 (Bankr. S.D.N.Y. 2003) .......................................................................24

*Wallace v. Tri-State Assembly, LLC*,
    201 A.D.3d 65 (App. Div. 2021) ...............................................................................18

*Zichichi v. Middlesex Mem'l Hosp.*,
    204 Conn. 399 (1987) ..............................................................................................14

**Rules**

CPLR 301 ..................................................................................................................6

CPLR 302(a) ......................................................................................................7, 9, 10

Federal Rule of Civil Procedure 12(b)(2) ........................................................................5

Federal Rule of Civil Procedure 12(b)(6) ........................................................................6

Pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6), Defendant Wendy Gutkin respectfully submits this memorandum of law in support of her motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim upon which relief can be granted.

## INTRODUCTION

Plaintiff Mira Tzur was hired by Henkel to model Henkel's Schwarzkopf Keratin Color cappuccino hair color for a photo shoot. Pursuant to the modeling engagement, Henkel stylist Wendy Gutkin colored Plaintiff's hair with a box of Schwarzkopf Keratin Color cappuccino hair color prior to the photo shoot. Plaintiff acknowledges that Gutkin applied the color in the manner it was intended and in accordance with the instructions. But Plaintiff claims that her hair was darker than she wanted—more akin to espresso than cappuccino—and seeks damages for other modeling jobs she allegedly lost because of her darker hair color.

The Court should dismiss Plaintiff's claims against Gutkin for two reasons. *First*, this Court lacks personal jurisdiction over Gutkin. Plaintiff filed suit in New York against Gutkin, a hair stylist residing in South Carolina, concerning hair color treatments Gutkin provided to Plaintiff in Connecticut. New York courts do not have general jurisdiction over Gutkin. Nor do they have specific jurisdiction over Gutkin because she does not have sufficient contacts with New York and Plaintiff's claims do not relate to any alleged misconduct by Gutkin in New York. Further, exercising jurisdiction over Gutkin in New York would violate due process. Therefore, the Court should dismiss Plaintiff's claims against Gutkin for lack of personal jurisdiction.

*Second*, Plaintiff has failed to state a plausible claim for relief against Gutkin under any legal theory. Plaintiff's negligence claim (First Cause of Action) fails because she does not plead any facts showing that Gutkin breached any duty of care in coloring her hair with the Schwarzkopf Keratin Color cappuccino hair color. Plaintiff's negligence and strict liability claims (Second and

1

Third Causes of Action) fail because she does not allege that Gutkin was the manufacturer or seller of the hair color or plead facts sufficient to allege that the hair color was defective.  Plaintiff's negligence and strict liability claims (First, Second, and Third Causes of Action) also are barred by the economic loss doctrine.  Plaintiff's breach of express and implied warranty claims (Fourth and Fifth Causes of Action) fail because she does not plausibly allege the sale of any product to Plaintiff, any product defect, the specific terms of any express warranty, or reliance on any warranty.  Plaintiff's fraudulent misrepresentation and fraudulent concealment claims (Sixth and Seventh Causes of Action) fail because she does not plead them with the requisite particularity, does not plead facts necessary to allege fraudulent intent, and does not plead facts giving rise to a duty of disclosure.  Plaintiff's negligent hiring and retention claim (Eighth Cause of Action) fails because it cannot be asserted against Gutkin as an employee.  Accordingly, the Court should dismiss Plaintiff's action against Gutkin for failure to state a claim.

## FACTUAL BACKGROUND

Plaintiff is a model and actress who has worked as a Melania Trump impersonator. (Compl. ¶¶ 36, 38.)  She alleges that she is a resident of New York.  (*Id.* ¶ 1.)

Defendants Henkel of America, Inc., Henkel Corporation, and Henkel Consumer Goods, Inc. (collectively, "Henkel") are Delaware corporations with their principal places of business in Connecticut.  (*Id.* ¶¶ 4, 8, 11.)

Defendant Gutkin has been a resident of South Carolina since April 2022 and intends to remain there.  (Gutkin Decl. ¶ 3.)  Prior to April 2022, she lived in New Jersey for over 30 years. (*Id.* ¶ 5.)  Gutkin currently works as a hair stylist for Henkel, which has its North American Consumer Goods headquarters in Stamford, Connecticut.  (*Id.* ¶ 7.)  She also works as a hair stylist at a salon in North Carolina.  (*Id.* ¶ 8.)  Gutkin is a cosmetologist-hair stylist licensed by the State

of New Jersey, a registered hairdresser and cosmetician licensed by the State of Connecticut, and a cosmetologist licensed by the State of North Carolina.  (*Id.* ¶¶ 9-11.)

Gutkin has never lived in New York.  (*Id.* ¶ 12)  She does not hold a New York driver's license, maintain New York bank accounts, or file New York tax returns.  (*Id.* ¶¶ 13-15.)  She does not own, use, or possess real property in New York.  (*Id.* ¶ 16.)  She is not licensed as a cosmetologist by the State of New York.  (*Id.* ¶ 17.)  Although Gutkin has occasionally traveled to New York, she does not regularly conduct or transact business in New York or derive substantial income from services in New York or from interstate commerce.  (*Id.* ¶ 18.)  Gutkin was not served with process in New York and has not consented to jurisdiction in New York.  (*Id.* ¶¶ 19-20.)

On November 20, 2019, Plaintiff attended a casting call to be a model for a photo shoot for Schwarzkopf Keratin Color, which required the model to dye her hair to cappuccino.  (*Id.* ¶¶ 36, 39.)  Plaintiff was selected and hired for the campaign.  (*Id.* ¶ 37.)

On December 2, 2019, Plaintiff came to Henkel's salon in Stamford, Connecticut to have Gutkin color her hair for the photo shoot.  (Gutkin Decl. ¶ 21; Compl. ¶ 38.)  Plaintiff alleges that "Gutkin was to color Plaintiff's hair to be the color of Cappuccino."  (Compl. ¶ 39.)  Plaintiff alleges that Gutkin applied a box of Schwarzkopf Keratin Color hair color "in the color Cappuccino" in "the manner it was intended" and "in accordance with the instructions provided by Schwarzkopf" but Plaintiff's hair was darker than she wanted—"more akin to an espresso color."  (*Id.* ¶¶ 42-43.)  Plaintiff claims she lost income from Melania Trump impersonator bookings and modeling jobs because of her darker hair color.  (Compl. ¶¶ 75, 79.)

On December 4, 2019, Gutkin attended Plaintiff's photo shoot in Brooklyn, New York.  (Gutkin Decl. ¶ 23.)  Gutkin did not provide any hair coloring or other hair styling services to Plaintiff at the photo shoot.  (*Id.* ¶ 24.)

-3-

On December 10, 2019, Plaintiff returned to Henkel's salon in Stamford, Connecticut to have her hair lightened.  (*Id.* ¶¶ 25-26; Compl. ¶ 53.)  Plaintiff alleges that Gutkin's "attempts to lighten the color of Plaintiff's hair and return Plaintiff back to her initial color were largely unsuccessful." (Compl. ¶ 56.)  Plaintiff then went to another privately-owned salon in Stamford, Connecticut to change her hair color.  (Gutkin Decl. ¶ 27; Compl. ¶ 66.)  The head colorist at the other salon allegedly advised Plaintiff that the only way to return her hair to its initial "chestnut color" was to first dye her hair black.  (Compl. ¶¶ 67-68.)  Other than the two times that Gutkin provided hair color treatment to Plaintiff in Connecticut on December 2, 2019 and December 10, 2019, she has not provided any hair coloring or other hairstyling or cosmetology services to Plaintiff.  (Gutkin Decl. ¶ 28.)

Plaintiff has asserted eight causes of action against Henkel and Gutkin.  The First Cause of Action alleges that Defendants were negligent because Gutkin "improperly applied the hair color products" to Plaintiff.  (Compl. ¶ 107.)  Although the Second through Seventh Causes of Action purportedly are asserted against all Defendants, they do not mention Gutkin specifically.  The Second Cause of Action alleges that Defendants were negligent in "designing, manufacturing, assembling, inspecting, marketing, selling, and/or distributing hair coloring products into the stream of commerce in that Defendants knew or should have known that the product was defective." (*Id.* ¶ 120.)  The Third Cause of Action alleges that Defendants are strictly liable because the hair color "was in an unsafe, defective, and inherently dangerous condition which was unreasonably dangerous to its users." (*Id.* ¶ 136.)  The Fourth Cause of Action alleges that Defendants breached an express warranty that the hair color was "safe, and well accepted by users." (*Id.* ¶ 155.)  The Fifth Cause of Action alleges that Defendants breached an implied warranty that the hair color "was safe and merchantable quality and fit for the ordinary use for

-4-

which said product was to be used." (*Id.* ¶ 166.)  The Sixth Cause of Action alleges that Defendants made fraudulent representations that the hair color "had been tested and was found to be safe and/or effective for use." (*Id.* ¶ 175.)  The Seventh Cause of Action alleges fraudulent concealment based on allegations that Defendants "misrepresented the safety of Defendants' hair coloring products." (*Id.* ¶ 187.)  The Eighth Cause of Action asserts a negligent hiring and retention claim based on allegations that "Gutkin, while so employed by Defendants, carelessly, recklessly, and/or negligently applied hair coloring products to plaintiff's hair and scalp." (*Id.* ¶ 205.)

## LEGAL STANDARD

### A.      Federal Rule of Civil Procedure 12(b)(2)

The Court must dismiss an action if it lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34 (2d Cir. 2010).  When deciding a motion to dismiss under Rule 12(b)(2), the Court "may consider facts outside the pleadings," including affidavits submitted in connection with the motion. *Stein v. Viscarello*, No. 11-CV-08304, 2012 WL 2866261, at *2 (S.D.N.Y. June 28, 2012).

"In a diversity case, personal jurisdiction is determined by reference to the law of the state in which the Court sits." *Id.*  Therefore, this Court must first determine whether there is "general jurisdiction" or "specific jurisdiction" over the defendant under New York law.  *See Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 430 (S.D.N.Y. 2019); *Lebron v. Encarnacion*, 253 F. Supp. 3d 513, 516–17 (E.D.N.Y. 2017).  If there is jurisdiction over the defendant under New York law, the Court must then consider "whether exercise of that jurisdiction comports with the requisites of due process."  *Stein*, 2012 WL 2866261, at *2 (quotation marks omitted).  When evaluating personal jurisdiction, the Court considers the defendant's "contacts with the forum state at the time of plaintiff's filing of the complaint."  *Id.*

### B.     Federal Rule of Civil Procedure 12(b)(6)

A complaint that fails to "state a claim upon which relief can be granted" must be dismissed.  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Further, a court is not required "to credit conclusory allegations or legal conclusions couched as factual allegations." *Edwards v. Sequoia Fund, Inc.*, 938 F.3d 8, 12 (2d Cir. 2019) (quotation marks omitted).

## THE COURT LACKS PERSONAL JURISDICTION OVER GUTKIN

This Court lacks personal jurisdiction over Gutkin because she is not subject to general or specific jurisdiction in New York and exercising jurisdiction over her would violate due process.

### A.     The Court Lacks General Jurisdiction Over Gutkin

New York's general jurisdiction statute provides for jurisdiction over "persons, property, or status as might have been exercised heretofore."  CPLR 301.  New York courts can exercise general jurisdiction over an individual only if the person "may fairly be regarded as 'at home' in the forum state—a location which, according to the Second Circuit, is generally limited to that individual's domicile."  *Lebron*, 253 F. Supp. 3d at 519.  "[A]n individual's domicile in New York has become something of a *sine qua non* for exercising all-purpose jurisdiction here."  *Id.* "For general jurisdiction over an individual to comport with due process, [a defendant] must be domiciled in New York, served in New York, or have otherwise consented to the court's jurisdiction."  *Reich v. Lopez*, 38 F. Supp. 3d 436, 455 (S.D.N.Y. 2014).  "Only on truly exceptional

occasions may general jurisdiction extend over individuals who are at home in a state that is not otherwise their domicile." *Id.* (quotation marks omitted).

Since April 2022, Gutkin has been domiciled in South Carolina.  (Gutkin Decl. ¶ 3.)  Before then, Gutkin was domiciled in New Jersey.  (*Id.* ¶ 5.)  Gutkin was never domiciled in New York, was not served with process in New York, and has not consented to the Court's jurisdiction.  (*Id.* ¶¶ 12, 19-20.)  Accordingly, the Court lacks general jurisdiction over Gutkin.

### B.  The Court Lacks Specific Jurisdiction Over Gutkin

Under New York's long-arm statute, the Court may exercise specific jurisdiction "[a]s to a cause of action arising from any of the acts enumerated in this section" over a defendant who:

1.  transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.  commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.  commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

    (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

    (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.  owns, uses or possesses any real property situated within the state.

CPLR 302(a).  None of these sections provide a basis for jurisdiction over Gutkin.

### 1.  Section 302(a)(1)

"In determining whether personal jurisdiction may be exercised under section 302(a)(1), a court must decide (1) whether the defendant transacts any business in New York and, if so, (2) whether this cause of action arises from such a business transaction." *Reich*, 38 F. Supp. 3d at 457

(quotation marks and alteration marks omitted).  "A defendant transacts business if he has purposely availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws." *Id.* (quotation marks omitted).

Plaintiff cannot establish either prong required for jurisdiction under Section 302(a)(1). First, Gutkin has not "purposefully availed" herself of the privilege of conducting business in New York.  Gutkin is not a licensed as a cosmetologist in New York and does not regularly conduct or transact business in New York.  (Gutkin Decl. ¶¶ 17-18.)  Although Gutkin has occasionally traveled to New York, "purposeful availment" requires more than such "random, fortuitous, or attenuated contacts." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 418 (S.D.N.Y. 2009) (quotation marks omitted); *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 415 (S.D.N.Y. 2021) ("infrequent trips to New York" for work "cannot serve as a basis for personal jurisdiction" because "[a] defendant may not be subject to jurisdiction based on random, fortuitous, or attenuated contacts" (quotation marks omitted)).

Second, Plaintiff's cause of action does not arise from Gutkin's transaction of any business in New York.  Plaintiff's claims against Gutkin arise from application of hair color to Plaintiff in Connecticut on December 2 and December 10, 2019.  (Compl. ¶¶ 38-46, 53-74, 107, 205; Gutkin Decl. ¶¶ 21-28.)  Although Plaintiff alleges that Gutkin attended Plaintiff's photo shoot in New York on December 4, 2019 (Compl. ¶ 48; Gutkin Decl. ¶¶ 23-24), Gutkin's mere attendance at the photo shoot does not constitute purposeful availment of the privilege of conducting business in New York and, in any event, none of Plaintiff's claims against Gutkin arise out of her attendance at that photo shoot.  Plaintiff does not allege that Gutkin improperly applied hair color to her or engaged in any actionable misconduct at that photo shoot.  Indeed, Gutkin did not provide any hair

-8-

coloring or hair styling services to Plaintiff at that photo shoot.  (Gutkin Decl. ¶ 24.)  Accordingly, Plaintiff has failed to establish personal jurisdiction over Gutkin under Section 302(a).

### 2.      Section 302(a)(2)

Section 302(a)(2) requires a defendant to "physically commit the allegedly tortious act within New York state" in order for jurisdiction to exist.  *Lebron*, 253 F. Supp. 3d at 522.  As explained above, Plaintiff does not allege that Gutkin committed any tortious act in New York.

### 3.      Section 302(a)(3)

"[C]ourts determining whether there is an injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury." *Lebron*, 253 F. Supp. 3d at 523 (quotation marks omitted). The situs of injury is where the plaintiff received "treatment, not where resultant damages are felt by plaintiff."  *Stein*, 2012 WL 2866261, at *4.  If the original event that caused the plaintiff's alleged injury occurred outside of New York, there is no jurisdiction under section 302(a)(3). *Lebron*, 253 F. Supp. 3d at 523-24.  Here, the original event that allegedly caused Plaintiff's injury was Gutkin's application of the hair coloring treatment in Connecticut.

Even if the original event allegedly causing injury to Plaintiff occurred in New York, jurisdiction under section 302(a)(3) would be improper because Gutkin does not regularly conduct or solicit business in New York or derive substantial revenue from services from New York or interstate commerce.  (Gutkin Decl. ¶ 18.)  The mere fact that Gutkin occasionally traveled to New York does not constitute regular transaction or solicitation of business in New York or result in substantial revenue from New York.  *See Caulfield v. Imagine Advisors, Inc.*, No. 07-CV-01257, 2007 WL 4615504, at *5, 7 (S.D.N.Y. Dec. 27, 2007) (noting that defendant who "occasionally travels to New York" does not "regularly conduct or solicit business in New York").

125946762.1

### 4. Section 302(a)(4)

The Court lacks jurisdiction over Gutkin under Section 302(a)(4) for two reasons. First, Gutkin does not own, use, or possess real property in New York. *See* CPLR 302(a)(4); (Gutkin Decl. ¶ 16). Second, Plaintiff cannot demonstrate that her causes of action arise from or relate to any such property in New York. Rather, Plaintiff's claims against Gutkin arise from and relate to events that occurred at a hair salon in Connecticut. *See Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-CV-04660, 2021 WL 1299489, at *11 (S.D.N.Y. Apr. 7, 2021) ("Because Plaintiff has not alleged any ownership, use, or possession of real property in New York that serves as the basis for his cause of action against Defendants, Section 302(a)(4) does not apply."); *Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) ("[I]t is not enough for the property to be related in some way to the parties' dispute; the plaintiff's cause of action must arise out of the fact of ownership, use or possession of New York realty." (quotation marks omitted)); *Stroud v. Tyson Foods, Inc.*, 91 F. Supp. 3d 381, 390 (E.D.N.Y. 2015) ("[T]o allege personal jurisdiction over a non-domiciliary defendant under Section 302(a)(4), a plaintiff must demonstrate a relationship between the property and the cause of action sued upon." (quotation marks omitted)).

### C. The Exercise of Jurisdiction Over Gutkin Would Violate Due Process

"Because plaintiff has not established a statutory basis for personal jurisdiction over defendants, the Court need not decide whether the assertion of personal jurisdiction over defendants would violate their constitutional rights." *Stein*, 2012 WL 2866261, at *5. Even if the Court were to reach that question, the exercise of jurisdiction over Gutkin in New York would violate due process. "Whether specific or general, the exercise of personal jurisdiction over a defendant is informed and limited by the U.S. Constitution's guarantee of due process." *Lebron*, 253 F. Supp. 3d at 517 (quotation marks and ellipsis omitted).

-10-

"The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Id.* (quotation marks omitted). "The 'minimum contacts' inquiry requires us to consider whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction." *Id.* (quotation marks omitted). "The 'reasonableness' inquiry requires us to decide whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* at 517-18 (quotation marks omitted). In assessing reasonableness, the Court considers "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Alwand Vahan Jewelry, Ltd. v. Lustour, Inc.*, No. 21-CV-01959, 2021 WL 3604517, at *3 (S.D.N.Y. Aug. 13, 2021) (quotation marks and citation omitted).

As discussed above, Gutkin lacks sufficient contacts with New York to justify the exercise of personal jurisdiction. Nor is it reasonable for the Court to exercise personal jurisdiction under the circumstances of this case. The exercise of jurisdiction over Gutkin will impose a significant burden on her because she resides in South Carolina. The other factors also weigh against jurisdiction in New York because the claims relate to events that occurred in Connecticut, and Connecticut, therefore, has a greater interest in the case. Evidence and witnesses would be found in Connecticut. Accordingly, the exercise of jurisdiction over Gutkin would violate due process.

**THE COMPLAINT FAILS TO STATE A CLAIM FOR RELIEF AGAINST GUTKIN**

In addition to the lack of personal jurisdiction over Gutkin, the Complaint fails to state any plausible claim against her.

### A.    Plaintiff Fails to State a Negligence Claim (First Cause of Action)

Plaintiff's First Cause of Action fails to state a negligence claim against Gutkin.  "In order to establish a prima facie case of negligence under New York law,[1] a claimant must show that: (1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach."  *Stagl v. Delta Airlines, Inc.*, 52 F.3d 463, 467 (2d Cir. 1995); *Phila. Indem. Ins. Co. v. Lennox Indus., Inc.*, No. 3:18-CV-00217, 2020 WL 705263, at *6 (D. Conn. Feb. 12, 2020) ("Under Connecticut law, the elements of a cause of action for negligence are duty, breach of that duty, causation, and actual injury."). Plaintiff's negligence claim fails because she does not plead facts showing that Gutkin breached any duty of care to Plaintiff.  To the contrary, Plaintiff's own allegations contradict any claims that Gutkin did not exercise reasonable care.  Plaintiff alleges that Gutkin applied the hair color "that was manufactured by Schwarzkopf *in the manner it was intended*" and "*in accordance with the instructions* provided by Schwarzkopf."  (Compl. ¶¶42-43.)  Although Plaintiff alleges that "Gutkin's continued attempts to lighten the color of Plaintiff's hair and return Plaintiff back to her initial color were largely unsuccessful" (*id.* ¶ 56), she fails to plead any facts that Gutkin engaged

---

[1]   A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *G&R Moojestic Treats Inc. v. MaggieMoo's Int'l, LLC*, 2004 U.S. Dist. LEXIS 8806, at *18 (S.D.N.Y. May 19, 2004).  "The first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdictions involved.  Where no [such] conflict exists . . . there is no reason to engage in a choice of law analysis." *Id.* (quotation marks omitted).  As discussed further herein, New York and Connecticut law are in accord with respect to the issues raised by this motion.  Therefore, there is no need for a choice of law analysis.

125946762.1

in any negligent acts or breached any applicable standard of care.  Accordingly, the First Cause of

Action against Gutkin should be dismissed.

> **B.**     **Plaintiff Fails to State a Negligence or Strict Liability Claim (Second and Third Causes of Action)**

Plaintiff's Second and Third Causes of Action fail to state claims for negligence or strict

liability.  The only product identified in the Complaint is Schwarzkopf Keratin Color cappuccino

hair color.  (Compl. ¶¶ 26-31.)  The Second Cause of Action alleges that "Defendants failed to

exercise ordinary care in the designing, manufacturing, assembling, inspecting, marketing, selling

and/or distributing hair coloring products into the stream of commerce in that Defendants knew or

should have known that the product was defective."  (*Id.* ¶ 120.)  The Third Cause of Action alleges

that "Defendants' hair coloring products [were] in an unsafe, defective, and inherently dangerous

condition which was unreasonably dangerous to its users."  (*Id.* ¶ 136.)  These claims both sound

in products liability and are based on allegations that the hair color was defective.

"Under New York law, a Plaintiff's claim based upon an alleged design defect or

manufacturing defect sounding in either negligence or strict liability are functionally equivalent

and will be analyzed concurrently."  *Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 887 (E.D.N.Y.

2018); *accord Faux v. Thomas Indus., Inc.*, No. CV-89-0233934-S, 1992 WL 293230, at *3 (Conn.

Super. Ct. Oct. 8, 1992) (under Connecticut law, "defectiveness is an essential element of a product

liability action based on negligence as well as one based on strict tort liability").  "There are three

types of defects recognized under New York law: (1) design defects; (2) manufacturing defects;

and (3) defective or inadequate warnings."  *Oden*, 330 F. Supp. 3d at 888; *accord McConologue

v. Smith & Nephew, Inc.*, 8 F. Supp. 3d 93, 109 (D. Conn. 2014) ("Connecticut merges the common

law products liability theories and recognizes three basic theories of products liability: (1)

manufacturing defects; (2) design defects; and (3) warnings defects.").

As an initial matter, Plaintiff's claims against Gutkin fail because Plaintiff does not (and cannot) plead that Gutkin was the *seller* or *manufacturer* of any allegedly defective hair color product.  *See Zichichi v. Middlesex Mem'l Hosp.*, 204 Conn. 399, 403 (1987) (stating that product liability claims may only be brought against "product sellers" and cannot be brought against providers of a service); *Aberbach v. Biomedical Tissue Servs., Ltd.*, 48 A.D.3d 716, 718 (App. Div. 2008) ("No sale, which is required to support a cause of action to recover damages for breach of warranty or based on strict products liability, is alleged here." (quotation marks omitted)); *Goldstein v. Brogan Cadillac Oldsmobile Corp.*, 90 A.D.2d 512, 514 (App. Div. 1982) (holding plaintiff could not assert strict products liability claim against defendant "since he was neither the manufacturer nor seller of the vehicle in question"); *Queensbury Union Free Sch. Dist. v. Jim Walter Corp.*, 91 Misc. 2d 804, 835 (Sup. Ct. 1977) (holding service providers are not subject to strict liability because that claim is "available only against those engaged in the manufacture, distribution or sale of the offending product those responsible for placing the defective product in the marketplace").  As Gutkin merely provided hair coloring services to Plaintiff (Compl. ¶¶ 36-39, 42-43, 56), she cannot be held liable for a product defect claim.

In any event, Plaintiff fails to plead facts necessary to establish a product defect claim.  To the extent Plaintiff claims a design defect, she fails to plead any facts identifying *how* the hair color was defectively designed or identifying a feasible alternative design.  *See Schulz v. Medtronic, Inc.*, No. 3:21-CV-00414, 2022 WL 503960, at *3 (D. Conn. Feb. 18, 2022) (dismissing design defect claim because plaintiff "does not identify how the tube was allegedly defectively designed" and "does not identify any reasonable alternative design"); *Oden*, 330 F. Supp. 3d at 888-89 (dismissing design defect claim because plaintiff failed to plead "any *facts* indicating the particular component that was defective or otherwise identifying a specific problem with the [product] that

-14-

caused it to be unreasonably dangerous" and failed to plead "the existence of a feasible alternative design"); *Cavanagh v. Ford Motor Co.*, No. 13-CV-04584, 2014 WL 2048571, at *2-3 (E.D.N.Y. May 19, 2014) (stating that "a design defect claim is properly dismissed where the plaintiff fails to plead facts identifying how the device is defectively designed or the existence of a feasible alternative design" (quotation marks and alteration marks omitted)).

To the extent Plaintiff alleges a manufacturing defect, Plaintiff fails to identify any specific defect in the hair color, fails to plead any facts concerning any problem in the manufacturing process, and fails to allege that the product was defective as compared to other samples of that product. *See Phila. Indem. Ins. Co.*, 2019 WL 1258918, at *4 (dismissing manufacturing defect claim because complaint failed to "identify a *specific problem* with the design or manufacturing of the subject products"); *Oden*, 330 F. Supp. 3d at 890 (dismissing manufacturing defect claim because plaintiff failed to "allege a *specific* manufacturing defect affecting the [product] implanted in Plaintiff as compared to other [products] that were produced by Defendant"); *Cavanagh*, 2014 WL 2048571, at *3 (dismissing manufacturing defect claim because "the Complaint does not identify the defective component of [the product]" and "does not supply any facts regarding the manufacturing process, nor does it allege that the [product] was defective as compared to other [products] manufactured by Defendants").

To the extent Plaintiff claims a failure to warn, Plaintiff fails to plead sufficient facts concerning whether the product was accompanied by warnings or why those warnings were inadequate. *See Schulz*, 2022 WL 503960, at *4 (dismissing failure to warn claim "because there are no allegations indicating if there were any warnings associated with the tube and if so, why those warnings were inadequate"); *Oden*, 330 F. Supp. 3d at 892 (dismissing failure to warn claim because the complaint fails to plead "facts setting forth what the warnings stated and how and/or

why the warnings were inadequate"); *Cavanagh*, 2014 WL 2048571, at *4 (dismissing failure to warn claim because "Plaintiffs have not adequately specified the danger that was not warned against" (quotation marks omitted)).

Because Plaintiff fails to state a claim for strict products liability, her negligence claim premised on the same allegations also fails to state a claim.  *See Cavanagh*, 2014 WL 2048571, at *5 (dismissing duplicative negligence claim because strict liability claim was insufficiently pled).  Accordingly, the Second Cause of Action for negligence and Third Cause of Action for strict liability should be dismissed.

### C.   The Economic Loss Doctrine Bars Plaintiff's Negligence, and Strict Liability Claims (First, Second, and Third Causes of Action)

Plaintiff's First, Second, and Third Causes of Action for negligence and strict liability also are barred by the economic loss doctrine.  "[U]nder the economic loss doctrine, New York does not permit tort recovery for damages caused by a product that fails to perform as promised because of negligence or product defect."  *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 367 (E.D.N.Y. 2022).  "[W]hether pleaded in negligence or in strict liability, there can be no tort recovery in the case where a product, although not itself unduly dangerous, does not function properly, resulting in economic loss other than physical damage to persons or property."  *La Barre v. Mitchell*, 256 A.D.2d 850, 851 (App. Div. 1998) (quotation marks omitted).  Courts therefore have held that "defects related to the quality of the product, e.g., product performance, go to the expectancy of the parties (loss of bargain) and are not recoverable in tort."  *Hemming v. Certainteed Corp.*, 97 A.D.2d 976, 976 (App. Div. 1983).  "[T]he 'economic loss' rule applies equally to negligence and strict liability causes of action and includes the direct and consequential damages which may result from product nonperformance."  *Id.*  Such economic loss claims are relegated "to the law of

-16-

contracts and warranty which governs the economic relations between suppliers and consumers of goods." *Id.*

Nor does Connecticut law allow a plaintiff to recover in tort for purely economic losses arising from a product failure. *See Mountain W. Helicopter, LLC v. Kaman Aerospace,* 310 F. Supp. 2d 459, 465–66 (D. Conn. 2004) ("[E]conomic losses resulting from a product failure are barred because they do not implicate the safety concerns of tort law."); *Flagg Energy Dev. Corp. v. Gen. Motors Corp.,* 244 Conn. 126, 153 (1998) (holding that plaintiff could not pursue a negligent misrepresentation claim seeking economic losses relating to allegedly defective performance of products), *overruled on other grounds by Ulbrich v. Groth*, 310 Conn. 375 (2013); *DeVillegas v. Quality Roofing, Inc.*, No. CV-92-0294190-S, 1993 WL 515671, at *3 (Conn. Super. Ct. Nov. 30, 1993) ("The long established common law rule in this state is that in the absence of privity of contract between the plaintiff and defendant, or of an injury to the plaintiff's person or property, a plaintiff may not recover in negligence for a purely economic loss.").

The gravamen of Plaintiff's claims in this action is that she did not like the hair color because her hair came out darker than she expected.  (*See* Compl. ¶ 43 (alleging "Plaintiff's hair color was not a Cappuccino color"); *id.* ¶ 45 (alleging Plaintiff's "hair color was a totally different shade than the shade portrayed"); *id.* ¶ 62 (alleging "Schwarzkopf incorrectly labeled the color as espresso instead of cappuccino")).  Such claims relating to the quality or performance of the product are not recoverable in tort.

Moreover, the only specific losses that Plaintiff alleges from the hair color are economic losses relating to her loss of bookings as a model and Melania Trump impersonator.  (*See* Compl. ¶ 75 (alleging Plaintiff "lost significant income that she would have generated just from her Melania Trump impersonator bookings" and "could no longer partake in [a] web series" because

of her hair color); ¶ 80 (alleging "Plaintiff could not book any modeling jobs, as, upon viewing her in-person at the casting call, she now looked entirely different from her portfolio pictures"). Although Plaintiff makes allegations of "personal injuries" and "medical" expenses (Compl. ¶¶ 113, 127, 153), such allegations are wholly conclusory, unsupported by any well-pled factual allegations, and contradicted by the rest of the Complaint.  *See Cedar & Washington Assocs., LLC v. Bovis Lend Lease LMB, Inc.*, 95 A.D.3d 448, 449 (App. Div. 2012) (holding that plaintiff's tort claims were barred by the economic loss doctrine where allegations of property damage "are too speculative or conclusory to have merit").  Accordingly, the First and Second Causes of Action for negligence and the Third Cause of Action for strict liability should be dismissed because they are barred by the economic loss doctrine.

### D.    Plaintiff Fails to State a Breach of Express Warranty or Breach of Implied Warranty Claim (Fourth and Fifth Causes of Action)

Plaintiff's Fourth and Fifth Causes of Action fail to state claims against Gutkin for breach of express warranty or breach of implied warranty.  Plaintiff's breach of warranty claims fail because she does not (and cannot) plead that Gutkin *sold* any product to Plaintiff.  Plaintiff merely alleges that she was serving as a hair model in a commercial for Henkel and that Gutkin applied hair color to Plaintiff pursuant to that contract.  (Compl. ¶¶ 36-39.)  When a product is merely used as an incidental part of services provided to a plaintiff, there is no *sale* that gives rise to any express or implied warranties.  *See Barnett v. City of Yonkers*, 731 F. Supp. 594, 601 (S.D.N.Y. 1990) (stating that "New York law is crystal clear that in service-oriented contracts," there is "no action in breach of implied warranty"); *Perlmutter v. Beth David Hosp.*, 308 N.Y. 100, 104 (1954) (holding that there is no sale "when service predominates, and transfer of personal property is but an incidental feature of the transaction"); *Wallace v. Tri-State Assembly, LLC*, 201 A.D.3d 65, 67-68 (App. Div. 2021) (stating that "implied warranties only extend to sellers"); *Aberbach*, 48

-18-

A.D.3d at 718 ("No sale, which is required to support a cause of action to recover damages for breach of warranty or based on strict products liability, is alleged here." (quotation marks omitted)); *Betro v. GAC Int'l, Inc.*, 158 A.D.2d 498, 498-99 (App. Div. 1990) (holding that doctor could not be held liable for breach of warranty because "[t]he prescription of the night brace did not constitute a 'sale' of the device" but "was merely a procedure incidental to medical treatment"); *Chenango Cnty. Indus. Dev. Agency v. Lockwood Greene Eng'rs, Inc.*, 114 A.D.2d 728, 729 (App. Div. 1985) (holding that plaintiff could not assert warranty claim because defendant was engaged to install roofing material and "any transfer of personal property was purely incidental to the performance of this service"); *Osborn v. Kelley*, 61 A.D.2d 367, 369 (App. Div. 1978) (holding that there was no sale giving rise to any warranties based on "the furnishing of the drug to the decedent as an incidental feature of the services rendered by the physicians"); *Teodoro v. Dolan*, No. CV-90-0303297, 1991 WL 288837, at *1 (Conn. Super. Ct. Dec. 27, 1991) (holding that plaintiff could not assert a warranty claim "where there is no sale of the product to the plaintiff"); *Epstein v. Giannattasio*, 25 Conn. Supp. 109, 113–14 (1963) (holding that a warranty claim involving a beauty treatment failed because "[t]he materials used in the performance of those services were patently incidental to that subject, which was a treatment and not the purchase of an article").

Plaintiff's breach of warranty claims also fail because she has failed to plead facts showing that the hair color was defective. "[A] successful breach of warranty claim requires that the product be defective." *Oden*, 330 F. Supp. 3d at 894 (quotation marks omitted). Because Plaintiff has not adequately alleged that the product was defective (Argument II.B, *supra*), she has failed to plead a breach of warranty claim. *See Phila. Indem. Ins. Co.*, 2019 WL 1258918, at *8 (dismissing express warranty claim because plaintiff failed to plausibly allege "an underlying

defect in the products"); *Oden*, 330 F. Supp. 3d at 895 (dismissing breach of warranty claim because it "requires that Plaintiff plead sufficient factual allegations that [the product] was defectively designed or manufactured" and "Plaintiff has failed to plead the necessary predicate elements to support his design and manufacturing defect claims"); *Cavanagh,* 2014 WL 2048571, at *5 ("Plaintiffs have not adequately pleaded a claim for strict products liability under a design defect, manufacturing defect, or failure to warn theory.  Thus, Plaintiffs have failed to state a plausible claim that Defendants breached an implied warranty.")*.*

Plaintiff's express warranty claims fail for the additional reason that she does not allege any express warranty made by Gutkin, the specific terms of any express warranty that was made, where the express warranty was made, or to whom the express warranty was made.  Plaintiff merely alleges in a conclusory manner that "Defendants expressly warranted the Defendants' hair coloring products was safe and well accepted by users."  (Compl. ¶ 155.)  Such conclusory allegations lack the necessary factual detail to state a claim for breach of express warranty.  *Hunter v. Shanghai Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 505 F. Supp. 3d 137, 159–60 (N.D.N.Y. 2020) (holding that plaintiff's allegations that "Defendants expressly warranted and represented to the public that the Heater was safe to use as a Heater in a residential home" were insufficient to allege "the terms of a specific express warranty or to whom it was made" (quotation marks omitted)); *O'Neil v. Argon Med. Devices, Inc.*, No. 3:17-CV-00640, 2020 WL 1149904, at *8 (N.D.N.Y. Feb. 13, 2020) ("Plaintiff has not alleged the terms of a specific express warranty or to whom it was made."); *Phila. Indem. Ins. Co.*, 2019 WL 1258918, at *8 (dismissing breach of warranty claim because plaintiff failed to "identify any specific warranty or representation made and allegedly breached by the defendants" or "the manner in which it was conveyed"); *Hingos v. W.L. Gore & Assoc.*, No. 3:16-CV-00969, 2017 WL 3309095, at *6 (N.D.N.Y. Jan. 27, 2017)

(dismissing claim for breach of express warranty where plaintiff failed to alleged "the exact terms of the warranty or where or to whom it was made"); *Teixeria v. St. Jude Med. S.C., Inc.*, 193 F. Supp. 3d 218, 225 (W.D.N.Y. 2016) (dismissing claim for breach of express warranty where plaintiff alleged representatives of defendants made "personal representations to [p]laintiff and/or his treating medical providers" that devices were safe but did not plead any facts "regarding where, when, and how" the statements were made) (quotation marks omitted).

Plaintiff's breach of express warranty claim also fails because she does not plead factual details regarding when, where, or how she allegedly relied on any such warranty.  Plaintiff's conclusory allegations of reliance (Compl. ¶¶ 157, 168) are insufficient.  *See Kyszenia*, 583 F. Supp. 3d at 364 ("The SAC does not specify where or when the defendant made the claimed assurances, nor any facts showing that the plaintiffs relied on them before they bought their cameras.  The plaintiffs' conclusory allegations of reliance are insufficient to state a plausible claim."); *Oden*, 330 F. Supp. 3d at 895 (dismissing express warranty claim where complaint merely alleged "reliance" on warranties "without providing any underlying factual details concerning when, where and how such reliance arose").  Moreover, Plaintiff's conclusory allegations of reliance are contradicted by her admission that she expressly agreed and was paid to have her hair dyed with Schwarzkopf Keratin Color cappuccino hair color for the advertising campaign—which is exactly what was done "in the manner it was intended" and "in accordance with the instructions provided by Schwarzkopf."  (Compl. ¶¶ 39, 42-43.)  Accordingly, the Fourth Cause of Action for breach of express warranty and the Fifth Cause of Action for breach of implied warranty should be dismissed.

**E.      Plaintiff Fails to State a Fraudulent Misrepresentation or Fraudulent Concealment Claim (Sixth and Seventh Causes of Action)**

Plaintiff's Sixth and Seventh Causes of Action fail to state claims against Gutkin for fraudulent misrepresentation or fraudulent concealment.  To state a claim for fraud under New York law, a plaintiff must allege facts showing that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance."  *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004) (quotation marks omitted).  Under Connecticut law, the elements of a fraud claim are "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury."  *E. Point Sys., Inc. v. Steven Maxim, S2k, Inc.*, 133 F. Supp. 3d 430, 435 (D. Conn. 2015) (quotation marks omitted).

"Fraud must be pled with particularity, . . . which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent."  *Eternity Glob. Master Fund Ltd,* 375 F.3d at 187 (quotation marks and citations omitted).  A plaintiff also must "allege facts that give rise to a strong inference of fraudulent intent, which may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Oden*, 330 F. Supp. 3d at 899.

Here, Plaintiff's fraudulent misrepresentation claim alleges that Defendants falsely represented that the hair color "had been tested and was found to be safe and/or effective for use." (Compl. ¶ 175.)  Plaintiff's fraudulent concealment claim alleges that Defendants omitted material

facts concerning the "negligent design and manufacture of [their] hair coloring products." (*Id.* ¶¶ 187, 194-95.)  Both claims fail because Plaintiff has failed to plead them with particularity. Plaintiff "has not identified any specific statements made by any of the Defendants or their agents, or when, where, and by whom those statements were made." *Louis Hornick & Co., Inc. v. Darbyco, Inc.*, No. 12-CV-05892, 2013 WL 3819643, at *3-4 (S.D.N.Y. July 23, 2013).  In particular, Plaintiff has not alleged that *Gutkin* made *any* statements regarding the design, manufacture, or testing of the hair color or its safety.  Nor has Plaintiff alleged any of the requisite details concerning any such statements.

Both claims also fail because Plaintiff has not alleged any facts to support her conclusory allegations of reliance.  Plaintiff alleges that "[i]n reliance on said representations, the Plaintiff was induced to, and did, purchase Defendants' hair coloring products thereby sustaining damage and injury." (Compl. ¶ 179.)  But there was no purchase of the Schwarzkopf Keratin Color cappuccino hair color (*id.* ¶¶ 36-39), and Plaintiff's conclusory allegations of reliance are contradicted by her admission that she expressly agreed and was paid to have her hair dyed with Schwarzkopf Keratin Color cappuccino hair color (*id.* ¶¶ 39, 42-43).

Plaintiff's claims also fail because she has not alleged any facts to support her conclusory allegations of scienter.  Plaintiff's conclusory allegations that Defendants made statements "with the intent of defrauding and deceiving the Plaintiff" (Compl. ¶177) and that Defendants "knew, or were reckless in not knowing, that its representations were false" (*id.* ¶ 188) are mere legal conclusions that are insufficient to plead fraudulent intent as to Gutkin or any of the Defendants. *See Cohen v. Koenig*, 25 F.3d 1168, 1173 (2d Cir. 1994) (stating that a plaintiff has the "burden of pleading circumstances that provide at least a minimal factual basis for their conclusory allegations of scienter" (quotation marks omitted)); *Fetet v. Altice USA, Inc.*, No. 21-CV-01512, 2021 WL

-23-

2941917, at *10 (S.D.N.Y. July 12, 2021) (holding that allegation that statements were "made with knowledge of [their] falsity at the time" was insufficient to plead fraudulent intent (quotation marks omitted)); *In re Trace Int'l Holdings, Inc.*, 289 B.R. 548, 557 (Bankr. S.D.N.Y. 2003) (holding that plaintiff "pleads only legal conclusions, and does not, as Rule 9(b) requires, allege facts that give rise to a strong inference of fraudulent intent" (quotation marks omitted)).

In addition, Plaintiff's fraudulent concealment claim fails under Connecticut law because it is not a separate cause of action. *See McCullough v. World Wrestling Ent., Inc.*, 172 F. Supp. 3d 528, 560 (D. Conn. 2016) ("[F]raudulent concealment is not a separate cause of action.").  It also fails under New York law because Plaintiff fails to plead any facts showing that Henkel had any duty to disclose. *See Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 (2d Cir. 1993) ("Proof of fraud requires a showing of either an affirmative misrepresentation of a material fact, or an omission of a material fact coupled with a duty of disclosure." (citation omitted)).  "A duty to disclose arises where the parties enjoy a fiduciary relationship or where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Kyszenia*, 583 F. Supp. 3d at 369 (quotation marks omitted).  Once again, Plaintiff only makes a conclusory allegation that "Defendants were under a duty to disclose to Plaintiff" (Compl. ¶ 193), but fails to plead any facts to support that conclusion as to Defendants generally or Gutkin in particular.  *See Oden*, 330 F. Supp. 3d at 900 (dismissing fraudulent concealment claim because complaint "does not adequately plead facts that the information purportedly withheld was not otherwise available to Plaintiff" or that "Defendant *knew* Plaintiff was acting on the basis of the mistaken knowledge").  Accordingly, the Sixth Cause of Action for fraudulent misrepresentation and the Seventh Cause of Action for fraudulent concealment should be dismissed.

125946762.1

### F.  Negligent Hiring and Retention (Eighth Cause of Action)

Plaintiff fails to state a claim against Gutkin for negligent hiring and retention.  To state a claim for negligent hiring or retention under New York law, in addition to the elements of negligence, Plaintiff must allege "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quotation marks and citations omitted). Under Connecticut law, the plaintiff must plead facts showing that "she was injured by the defendant's own negligence in failing to select as its employee a person who was fit and competent to perform the job in question and that her injuries resulted from the employee's unfit or incompetent performance of his work." *Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005) (quotation marks omitted).  Here, Plaintiff's has asserted a negligent hiring and retention claim against Henkel based on its hiring of Gutkin.  (Compl. ¶¶ 203-207.)  Because a negligent hiring and retention claim can only be brought against an employer and cannot be asserted against the employee, the Eighth Cause of Action against Gutkin must be dismissed.

### CONCLUSION

For the reasons set forth above, the Court should grant Gutkin's motion to dismiss the case against her for lack of personal jurisdiction and for failure to state a claim.

Dated:  New York, New York
　　　　July 3, 2023

By: *s/   Berj K. Parseghian*　　　　　　
Berj K. Parseghian
LEWIS BRISBOIS BISGAARD & SMITH LLP
77 Water Street, Suite 2100
New York, New York 10005
Telephone: 212-232-1300

*Attorneys for Defendant Wendy Gutkin*

-25-